MOORE v. MONNIG DRY GOODS CO.
(No. 9147.)

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 1, 1919. Rehearing Denied
Dec. 6, 1919.)

1. HOMESTEAD ⊂57(2) — IN FORECLOSURE
DECLARATIONS OF MORTGAGOR AS TO OWNER-
SHIP OF LAND AND USES THEREOF ADMIS-
SIBLE.

In mortgage foreclosure action where de-
fendant interposed plea of homestead rights in
a 156-acre tract covered by mortgage, testimony
of attorney for mortgagee as to declarations of
mortgagor at time of execution of mortgage
as to his ownership of 1,200 acres of land and
as to the uses he had been making thereof *held*
admissible.

2. HOMESTEAD ⊂70—NO HOMESTEAD RIGHTS
IN SEPARATE TRACT OF LAND ON WHICH
OWNER DID NOT LIVE.

Where 156-acre tract of land was situated
about a mile from 15-acre tract on which own-
er lived and was not a part of the tract owner
had designated as his homestead in executing a
mortgage, and where owner divided his atten-
tion between mercantile business and farming,
doing most of the farming by hired help, he had
no homestead rights in the 156-acre tract.

Appeal from District Court, Tarrant Coun-
ty.; R. E. L. Ray, Judge.

Suit by the Monnig Dry Goods Company
against J. A. Moore. Judgment for plaintiff,
and defendant appeals. Affirmed.

Seb. F. Caldwell, of Mt. Pleasant, for ap-
pellant.

E. T. Murphy, of Ft. Worth, for appellee.

DUNKLIN, J. J. A. Moore has appealed
from a judgment in favor of the Monnig Dry
Goods Company foreclosing a mortgage lien
on 269 acres of land in Titus county, con-
sisting of three separate tracts, one being
156 acres out of the Eli Belcher survey.
The only defense urged by Moore against
the foreclosure sought was the plea of
homestead to the 156-acre tract.

The trial was before the court without the
aid of a jury. The evidence shows that at
the time the mortgage was executed appel-
lant owned several tracts of land in Titus
county which aggregated about 1,200 acres.
One of those tracts consisted of 15 acres sit-
uated near the town of Talco upon which
was the residence in which Moore and his
family resided, and this tract was separated
from all the other tracts and was not in-
cluded in the mortgage. On the contrary,
that tract, together with another tract called
the McElroy tract of 178 acres, about a mile
distant, was expressly designated as the
homestead of Moore in the mortgage given
to the appellee, and the land in controversy
consisted of other and different tracts. Ap-
pellant stresses particularly the case of Tex-
as Land & Loan Co. v. Blalock, 76 Tex. 87,
13 S. W. 12. In that case the mortgage
sought to be foreclosed was given upon a
tract of land upon which the mortgagor ac-
tually resided with his family, and the in-
strument contained a designation of the
homestead upon another tract which was
not then being used for homestead purposes.
Briefly stated, the decision was that, not-
withstanding the designation of the home-
stead contained in the mortgage, he was
chargeable with notice of the homestead
character of the property mortgaged by rea-
son of the fact that it was in the actual use
and occupancy of the family as a homestead
and place of residence, in other words, that
such actual occupancy and use of the prop-
erty mortgaged as a homestead made it the
homestead of the family as a matter of law,
and the mortgagee could not shut his eyes to
the facts which so impressed the property
with the homestead character. That de-
cision is not applicable to the facts in the
present case, in that Moore's residence where
he and his family resided was upon the 15-
acre tract mentioned above. The 156-acre
tract of land out of the Eli Belcher survey
claimed by him to be exempt was situated a
mile or so distant from the 15-acre tract.
He also owned the other tract of 178 acres
designated as the McElroy tract, situated
about one mile from the 15-acre tract upon
which he resided.

Moore testified that at the time, in 1914,
when he executed the mortgage in contro-
versy, he owned about 1,200 acres of land in
all, and that he was engaged in the mercan-
tile business in the town of Talco, where he
owned a lot which he did not claim as a
business homestead. He further testified as
follows:

"At the time the deed of trust was given, I
was in the mercantile business. That was dur-
ing 1914 that I was in the mercantile business.
I wasn't giving practically all of my personal
attention to the mercantile business at that
time; I was engaged in farming, too. I did a lot
of farming by hired help. I rented some of the
places. During 1914 I worked the Eli Belcher
land personally and pastured the McElroy land,
and about the same way in 1915. In 1914, I
worked this land here that I designated as my
homestead and was living on the 15 acres. The
A. V. McElroy place I rented out and pas-
tured the pasture land myself. I used the pas-
ture land whenever it was necessary and rented
the other part of it on half shares. From time
to time I cultivated the tillable land out of
about 1,200 acres. Sometimes I would culti-
vate one place a year and sometimes I would
rent it; but I tried to keep it in cultivation and
tried to keep it moving all the time."

In addition to that testimony, the attor-
ney for appellee, who acted for the mort-
gagee in taking the mortgage, testified to

⊂For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

declarations made to him by Moore at the time concerning the ownership of an aggregate of about 1,200 acres of land and of the uses he had been making of the same.

[1, 2] We think it clear that all of that testimony was admissible, and that the same, together with the other facts and circumstances recited above, constituted proof sufficient to sustain the trial judge's finding that the Eli Belcher tract of 156 acres, covered by the mortgage, was no part of the homestead of Moore at time the mortgage was given. And that this conclusion is not in conflict with the decision of our Supreme Court in the case of Texas Land & Loan Co. v. Blalock, supra, we think, is clearly sustained by numerous decisions in this state, such as Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Calvin v. Neel, 191 S. W. 791; Watkins Land Co. v. Temple, 56 Tex. Civ. App. 65, 119 S. W. 728; Johnson v. Conger, 66 S. W. 405. And in this connection, we think it proper to note further that Moore's wife was not a party to the suit, and no issue was presented either by pleading or by proof that in making the designation of homestead, shown in the deed of trust, he thereby intended to defraud his wife of her homestead rights.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.